UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LAWRENCE OGBECHIE,<br><br>    Plaintiff,<br><br>    v.<br><br>R. COVARRUBIAS, et al.,<br><br>    Defendants. | Case No. 18-CV-00121-EJD<br><br>**ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 50 |

Plaintiff Lawrence Ogbechie is a psychiatrist who worked as a contract medical provider at Salinas Valley State Prison ("SVSP"). One of his inmate patients was Daniel.[1] On May 8, 2017, Daniel attacked Plaintiff during a session in Plaintiff's office at SVSP. Plaintiff has filed this civil rights and negligence suit against certain correctional officers at SVSP for prolonging Daniel's attack on Plaintiff through their failure to visually monitor the session. Presently before the Court is Defendants' motion for summary judgment, or in the alternative partial summary judgment. Dkt. 50. The Court finds this matter suitable for decision on the papers and, for the ensuing reasons, GRANTS IN PART AND DENIES IN PART Defendants' motion.

**I.    BACKGROUND**

    **A.    Factual Background**

The following basic facts form the basis of Plaintiff's claims. They are undisputed unless otherwise noted. *See generally* Dkt. 56-1 ("Pl. Responsive Separate Statement").

Plaintiff Lawrence Ogbechie is an experienced psychiatrist who has been practicing for

---

[1] The Court follows the parties' lead in not using Daniel's last name in order to protect his privacy.

around 20 years. Dkt. 40 ("FAC") ¶ 4; ECF 51 ("Purcell Decl.") at 11-13 (Ogbechie Depo. at 22-24). He began working at Salinas Valley State Prison ("SVSP") as a contract medical provider in March 2017. *See* Dkt. 50 ("Mot.") at 5; Dkt. 56 ("Opp.") at 2; Purcell Decl. at 14 (Ogbechie Depo. at 25); ECF 56-2 ("Fiol Decl.") at 10 (Ogbechie Depo. at 17). Specifically, he provided psychiatric services at the Correctional Treatment Center ("CTC") at SVSP, which Plaintiff describes as "the emergency room section" of the prison where both medical and psychiatric treatment is provided. Purcell Decl. at 18-19 (Ogbechie Depo. at 30-31). Plaintiff saw his inmate patients in his office in the CTC. *Id.* at 25-26 (Ogbechie Depo. at 37-38). Generally, there were three or four correctional officers—two or three Officers and one Sergeant—stationed at the CTC at any given time to provide security. Mot. at 8; Pl. Responsive Separate Statement at 4; Purcell Decl. at 180 (Sharps Depo. at 26).

On or before May 3, 2017, Plaintiff became the psychiatrist for an inmate patient named Daniel; as such, he was part of Daniel's Interdisciplinary Treatment Team ("IDTT"). Pl. Responsive Separate Statement at 1-2; Fiol Decl. at 27 (Ogbechie Depo. at 70). Daniel had been referred to the CTC because he was a "danger to self" due to suicide ideation. Purcell Decl. at 38 (Ogbechie Depo. at 55); Pl. Responsive Separate Statement at 2. Plaintiff's notes indicate that he met with Daniel twice prior to May 8, 2017. Pl. Responsive Separate Statement at 2 (citing Fiol. Decl. at 28-29 (Ogbechie Depo. at 106-07)).

On May 8, 2017, Plaintiff asked a correctional officer to bring Daniel to his office for a treatment session. Purcell Decl. at 72-73 (Ogbechie Depo. at 115-16). During that shift, Officers R. Covarrubias, G. Guzman, and C. Alejo were assigned to the CTC, along with their supervisor, Sergeant Zamora; of those, only Officer Covarrubias is a defendant in this case. Fiol Decl. at 72, 90 (Covarrubias Depo. at 70, 111). Neither Plaintiff nor Defendant Covarrubias remember who brought Daniel to Plaintiff's office, but Officer Guzman testified that he and Defendant Covarrubias did so together. *Id.* at 31, 80-81, 248 (Ogbechie Depo. at 116; Covarrubias Depo. at 89-90; Guzman Depo. at 67). Although some inmate patients are placed in the Therapeutic Treatment Module (a cage-like structure) or restrained during their sessions, Plaintiff did not order that to be done to Daniel; Daniel simply sat in a chair in Plaintiff's office. Purcell Decl. at 23-24,

73 (Ogbechie Depo. at 35-36, 117). Plaintiff testified that although he considered all prisoner patients to be potential threats to others, "there was nothing prior to Inmate [Daniel] entering the office that day that indicated to [Plaintiff] that he was a particular threat." Purcell Decl. at 41-42, 73 (Ogbechie Depo. at 58-59, 117). Indeed, Plaintiff believed that, "based on what he had told [Plaintiff]" in their last session, he was "getting better and that he [could] be sent back to his yard." *Id.* at 73 (Ogbechie Depo. at 117).

At some point during the session, Daniel stood up and attacked Plaintiff. Fiol Decl. at 34 (Ogbechie Depo. at 119). Plaintiff cannot recall the details of the attack. *Id.* at 34-36 (Ogbechie Depo. at 119-121). The first person to become aware of the attack was a nurse, Brian Terhaar. Mot. at 10; Opp. at 4. Terhaar testified that he heard a loud bang, and then a series of bangs less than a minute later. Fiol Decl. at 319-320 (Terhaar Depo. at 36-37). The noise caused him to exit the nursing station and look up and down the hallway, where he saw Plaintiff "stumble[] out of his office" followed by Daniel. *Id.* at 320-22 (Terhaar Depo. at 37-39). Upon seeing Daniel "attacking Dr. Ogbechie," Terhaar yelled "Custody"; Daniel then "turned and started coming at" Terhaar. *Id.* at 322 (Terhaar Depo. at 39). Terhaar yelled "Officer," at which point Defendant Covarrubias came out of correctional officers' station and sprayed Daniel with pepper spray. *Id.* at 324-25 (Terhaar Depo. at 41-42). Daniel went to the ground after being sprayed, ending the attack. *Id.* at 328 (Terhaar Depo. at 45).

Precisely where Defendant Covarrubias was during the time of the attack is disputed. Defendant Covarrubias admits, though, that he was not standing outside Plaintiff's office and visually monitoring the session through the window in the door when the attack commenced. *See* Pl. Responsive Separate Statement at 5; Purcell Decl. at 161 (Covarrubias Depo. at 93-94). Defendant Covarrubias testified that he was in the corrections officers' station processing a "bed change" using the computer and phone. Purcell Decl. at 161-62 (Covarrubias Depo. at 93-94).

Plaintiff brings the instant suit because he believes the SVSP correctional staff failed to adequately protect him during the May 8, 2017 attack. The gravamen of Plaintiff's suit is that Defendant Covarrubias should have been observing Plaintiff's treatment session with Daniel, which would have permitted him to intervene in the attack sooner. Plaintiff further alleges such

3

monitoring was provided for by that the Operational Procedures in place at SVSP. *See* Opp. at 2. Specifically, Plaintiff cites SVSP Operational Procedure 39, Section 39.29 ("OP 39.29"), which provides, in pertinent part: "The correctional officer assigned to provide coverage will position him/herself outside of the treatment room in a manner that he/she can see the clinician, but not hear what is being said, thus maintaining security and confidentiality simultaneously"; and "The correctional officer(s) providing coverage will remain nearby, where the clinician can be seen but the clinical interaction between the [Inmate/Patient] and attending clinician cannot be overhead." Purcell Decl. at 116-121.

Although Defendants contest whether OP 39.29 had been orally abrogated prior to the incident and whether OP 39.29 required continuous monitoring, they acknowledge it was part of the written SVSP Operational Procedures. It is likewise undisputed that the "post order"—i.e., the formal description of duties—for Defendant Covarrubias's position at the CTC included, "Provide coverage for medical staff, medical rounds, examinations." Fiol Decl. at 228-29, 233-35 (Guzman Depo. at 43-44, 49-51). Defendant Covarrubias testified that he was given and reviewed his post order upon being assigned to the CTC in February 2017. *Id.* at 54-55 (Covarrubias Depo. at 28-29).

The parties dispute whether Plaintiff had reason to expect Defendant Covarrubias (rather than some other correctional officer) to monitor the session. *See* Pl. Responsive Statement at 4. It is undisputed, though, that the other correctional officers on duty at the CTC (Officer Guzman, Officer Alejo, and Sergeant Zamora) were not in the vicinity. Officer Guzman testified that after he and Officer Covarrubias escorted Daniel to Plaintiff's office, he was called away for another task by Sergeant Zamora. Fiol Decl. at 248-49 (Guzman Depo. at 67-68). Accordingly, says Officer Guzman, it was "implicit between the two of [them] that [Officer Covarrubias] was going to keep an eye on the treatment session." *Id.* Officer Covarrubias also acknowledges that the other two correctional officers were occupied with "other duties" in other parts of the CTC at the time. Purcell Decl. at 159 (Covarrubias Depo. at 90); Mot. at 10.

**B.     Procedural Background**

The operative First Amended Complaint ("FAC") was filed on June 27, 2019 and

4

1  answered by Defendants on August 2, 2019. Dkt. 40 ("FAC"); Dkt. 41 ("Answer"). The FAC
2  contains two counts: (1) a claim under 42 U.S.C. § 1983 for violation of the Fourteenth
3  Amendment to the U.S. Constitution, FAC ¶¶ 27-32; and (2) a claim for common law negligence
4  under California law, *id.* ¶¶ 33-39. Both counts are brought against Defendant Covarrubias, Doe
5  correctional officers, and three supervisory correctional officers: Correctional Sergeant P. Soto,
6  Correctional Captain M. Thomas, and Associate Warden N. Walker. *Id.* ¶¶ 5-9. These latter three
7  Defendants were not present at the CTC at the time of the incident, but were allegedly responsible
8  for training Defendant Covarrubias and ensuring that correctional staff complied with OP 39.29.
9  *See* Opp. at 3, 6-8. All Defendants are sued in their personal capacities. *Id.* at p. 5-6.
10  On January 16, 2020, Defendants filed a motion for summary judgment, or in the
11  alternative partial summary judgment. ECF 50. The motion has been fully briefed and is suitable
12  for decision without oral argument.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the basic question is "whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

To be clear, the mere existence of a factual dispute, by itself, does not necessarily preclude summary judgment. *See Liberty Lobby*, 477 U.S. at 255. The dispute must be genuine and the disputed fact must be material. A dispute is only genuine if "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52. In other words, the evidence must be sufficient to support a jury's finding for either side. *See Scott v. Harris,* 550 U.S. 372, 380 (2007); *see also Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). Furthermore, a fact is only material if it

5

could establish an element of a claim or defense and, therefore, "might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (explaining that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). When the moving party will have the burden of proof on an issue at trial, it must "affirmatively demonstrate" that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On the other hand, "[w]hen the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Nissan Fire and Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant carries its initial burden, the nonmovant "'may not rest upon the mere allegations or denials of the adverse party's pleading,' but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.'" *Devereaux*, 263 F.3d at 1076 (quoting Fed. R. Civ. P. 56(e)).

The court must view evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1002 (9th Cir. 2019); *see also Scott,* 550 U.S. at 378. That is because the court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006).

### III. DISCUSSION

Defendants move for summary judgment as to both of Plaintiff's claims and all

6

Defendants.

At the outset, the Court DISMISSES the claims as to the Doe Defendants. Although the FAC names Does 4-50 as defendants for both Count 1 and Count 2, Plaintiff does not introduce any evidence as to these defendants or otherwise address them in the Opposition briefing. Plaintiff has now had "ample opportunity prior to the time defendants moved for summary judgment to conduct reasonable discovery, identify these defendants, and seek leave to amend the complaint to name them properly." *Garcia ex rel. Estate of Acosta-Garcia*, 428 Fed. App'x 706, 708–09 (9th Cir. 2011). The Court will therefore exercise its authority to dismiss the Doe defendants from the case. *See Craig v. United States*, 413 F.2d 854, 856 (9th Cir. 1969).

Having dealt with that housekeeping, the Court focuses its analysis on the named Defendants. For the reasons below, the Court will GRANT the motion as to the § 1983 claim (Count 1) and DENY the motion as to the negligence claim (Count 2).

### A. Count 1: 42 U.S.C. § 1983 Claim

As noted above, Plaintiff brings his § 1983 claim against Officer Covarrubias and three supervisory officers (Correctional Sergeant P. Soto, Correctional Captain M. Thomas, and Associate Warden N. Walker). The Court first addresses the claim against Defendant Covarrubias before moving to the claim against the supervisory officers.

#### 1. Claim against Officer Covarrubias

Plaintiff claims that Officer Covarrubias's failure to adequately protect him from Daniel's attack violated his substantive due process rights under the 14th Amendment. Specifically, Plaintiff charges Officer Covarrubias with not visually monitoring Plaintiff's session with Daniel, as allegedly required by OP 39.29; that omission allegedly caused a delay in Officer Covarrubias's intervention in the attack. In their motion for summary judgment, Defendants argue that Plaintiff's evidence does not suffice to establish the alleged violation and, even if it did, Officer Covarrubias is entitled to qualified immunity.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam).

7

Accordingly, a plaintiff asserting a § 1983 claim against an individual official "must demonstrate that (1) a federal right has been violated and (2) the right was clearly established at the time of the violation." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Both prongs must be satisfied for the plaintiff to prevail, and the court has "discretion in deciding which . . . should be addressed first." *Pearson*, 555 U.S. at 236.

In this case, the Court agrees with Defendants that Plaintiff has not met his burden as to either prong. That is, Plaintiff's evidence does not suffice to demonstrate that Officer Covarrubias violated Plaintiff's 14th Amendment right to due process or that the asserted right was clearly established.

### a. State-Created Danger

The Court begins by setting out the basic legal framework for Plaintiff's claim against Officer Covarrubias. At a high level, Plaintiff alleges a deprivation of his substantive due process right to liberty under the 14th Amendment. As relevant here, "simply failing to prevent acts of a private party" is generally "insufficient" to establish a denial of substantive due process. *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). "The general rule is that a state is not liable for its omissions and the Due Process Clause does not impose a duty on the state to protect individuals from third parties." *Martinez*, 943 F.3d at 1271 (internal quotations omitted). However, "[t]here are two exceptions to this general rule: (1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016).

Plaintiff Ogbechie asserts a claim under the state-created danger exception.[2] To make out

---

[2] Plaintiff does not claim that the special relationship exception—which the Ninth Circuit has said "does not apply when a state fails to protect a person who is not in custody," *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 972 (9th Cir. 2011)—applies here. *See also Campbell v. State of Washington Dep't of Soc. & Health Servs.*, 671 F.3d 837, 842 (9th Cir. 2011) (The "special relationship exception is created when the State takes a person into its custody and holds him there against his will.") (internal quotations omitted); *Arnold v. Cty. of Alameda*, No. 15-CV-04083-HSG, 2016

8

a claim under the state-created danger exception, a plaintiff must establish three things: "First, she must show that the officers' affirmative actions created or exposed her to an actual, particularized danger that she would not otherwise have faced"; "[s]econd, she must show that the injury she suffered was foreseeable"; "[t]hird, she must show that the officers were deliberately indifferent to the known danger." *Martinez*, 943 F.3d at 1271; *see also L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996) (hereinafter *"Grubbs II"*) (applying the framework "in an action against a state official for an injury to a prison employee caused by an inmate"). In the instant case, the alleged danger was the risk of being attacked and injured by the inmate patient, Daniel. The Court therefore begins by asking whether Defendant Covarrubias's affirmative actions exposed Plaintiff to a risk of harm at the hands of Daniel.

The "affirmative conduct" requirement has several components. *Pauluk*, 836 F.3d at 1124. To begin with, a plaintiff must show that state action as opposed to inaction placed him in danger. *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997). A mere failure—or even refusal—to act in response to a known danger does not suffice. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989) ("Because . . . the State had no constitutional duty to protect Joshua against his father's violence, its failure to do so—though calamitous in hindsight—simply does not constitute a violation of the Due Process Clause."); *e.g.*, *Pinder v. Johnson*, 54 F.3d 1169, 1175-76 & n.* (4th Cir. 1995) ("As was true in *DeShaney*, the state did not 'create' the danger, it simply failed to provide adequate protection from it. In both cases, the most that can be said of the state functionaries is that they stood by and did nothing when suspicious circumstances dictated a more active role for them.") (internal quotations omitted); *Majors v. City of Oakland*, No. C 05-00061 CRB, 2005 WL 2216955, * 4 (N.D. Cal. July 25, 2005) ("The Oakland Police Department might have understood that taking no action to break up the disruption in the church could have left plaintiffs in danger; however, their refusal to act is not an affirmative creation of an already-existing danger.").

Further, "a plaintiff must show not only that the defendant acted 'affirmatively,' but also

---

WL 4074484, at *4 (N.D. Cal. Aug. 1, 2016) (no special relationship between a nurse who was attacked by an inmate and the officers at Santa Rita Jail).

9

1  that the affirmative conduct placed him in a 'worse position than that in which he would have been
2  had the state not acted at all.'" *Pauluk*, 836 F.3d at 1124–25 (quoting *DeShaney*, 489 U.S. at 201);
3  *see also Johnson v. City of Seattle*, 474 F.3d 634, 641 (9th Cir. 2007) ("The decision to switch
4  from a more aggressive operation plan to a more passive one was not affirmative conduct that
5  placed the Pioneer Square Plaintiffs in danger, because it did not place them in any worse position
6  than they would have been in had the police not come up with any operational plan whatsoever.").
7  To be clear, the question is not "whether the danger already existed" because, "by its very nature,
8  the doctrine only applies in situations in which the plaintiff was directly harmed by a third party—
9  a danger that, in every case, could be said to have 'already existed.'" *Martinez*, 943 F.3d at 1271.
10 Rather, the defendant officer must have done something either to "expose[] an individual to a
11 danger which he or she would not have otherwise faced" or leave the person "in a situation that
12 was more dangerous than the one in which they found" him. *Id.* at 1271-72 (internal quotations
13 omitted). The danger, moreover, must be "actual" and "particularized." *Id.* at 1271.

14  Applying these requirements to the instant case, Plaintiff must show that Officer Covarrubias played some role in creating or exacerbating the risk that Plaintiff would be attacked by Daniel; only then could he be liable for his failure to intervene more quickly in the attack.

17  In their motion for summary judgment, Defendants argue that Plaintiff has not done so. Mot. at 12-13. Plaintiff disagrees of course, offering two potential affirmative acts.

19  First, Plaintiff says that "the State" created the danger Dr. Ogbechie faced in that "[t]he prison was a state creation . . . populated by dangerous felons in the custody of the State." Opp. at 9. There are several problems with this argument, however. The creation of the prison is not affirmative conduct on the part of *Officer Covarrubias*, the state official against whom Plaintiff brings his claim. *See Grubbs II*, 92 F.3d at 900 (The "plaintiff must show that the state official participated in creating a dangerous condition."). There is no evidence that Defendant Covarrubias had any role in creating SVSP, and Plaintiff has not sued the State entity responsible for doing so.

27  Even if an affirmative act by some other state entity could qualify, a claim for a state-created danger must be based on "more than merely a failure to create or maintain a safe work

10

environment." *Pauluk*, 836 F.3d at 1124. As the Supreme Court explained in *Collins*, the State does not have a "federal constitutional obligation to provide its employees with certain minimal levels of safety and security." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 127 (1992); *see also Jensen v. City of Oxnard*, 145 F.3d 1078, 1083 (9th Cir. 1998). Consequently, though prisons are certainly dangerous work environments, Plaintiff cannot base his claim on the mere creation of that work environment.

Moreover, Plaintiff does not dispute that he "voluntarily accepted" an offer of employment at SVSP. *Collins*, 503 U.S. at 128-29. Nor is there any evidence that he objected to being assigned to the CTC or as Daniel's psychiatrist. Plaintiff's claim thus differs substantially from that in *Pauluk v. Savage*, the sole case Plaintiff cites in support of his argument. There, the Ninth Circuit found that Plaintiff's involuntary transfer to a dangerous work site was an affirmative act because Plaintiff had resisted the transfer; the Ninth Circuit also found that the specific defendants "were sufficiently involved" in the transfer decision "that a reasonable jury could conclude they should bear some responsibility for that transfer." 836 F.3d at 1125.

Plaintiff responds that he was "lured into" accepting the offer to work at SVSP "based on the obvious understanding that he would be provided adequate security." Opp. at 9. The implication appears to be that he would not have accepted the job if he had not believed he would be adequately protected. That may be so, but Plaintiff cites no affirmative representations by Officer Covarrubias or any other defendant regarding the protection he would receive, or assuring him of safety while working at the CTC. In other words, though Plaintiff may have believed he would receive a certain level of protection, that belief is not attributable to the Defendants in this case.

For all these reasons, the Court rejects Plaintiff's argument that the State's establishment of SVSP and/or subsequent hiring of him constitutes the affirmative act necessary for his claim against Officer Covarrubias.

The second affirmative act Plaintiff cites is also flawed. Plaintiff says that Defendant Covarrubias's "act of bringing Daniel to Dr. Ogbechie for the treatment session" qualifies. Opp. at 10. Yet, according to Plaintiff's own version of the facts, "there was no set schedule for seeing

11

1  prisoner-patients" and that Plaintiff himself would typically determine when to see a particular
2  patient. *Id.* Correctional officers like Officer Covarrubias had no authority to direct Plaintiff's
3  treatment of inmate patients. Pl. Responsive Separate Statement at 3-4. And indeed, Plaintiff
4  testified that on May 8, 2017, he asked a correctional officer to bring Daniel to his office for a
5  treatment session. Purcell Decl. at 72-73 (Ogbechie Depo. at 115-16). Because Plaintiff made the
6  decision to see Daniel and requested that he be brought to Plaintiff's office, it cannot be said that
7  Defendant Covarrubias's acquiescence was responsible for exposing Plaintiff to harm.

Plaintiff disagrees, arguing that Officer Covarrubias's action "impli[ed]" he "was ready to do his job"—an implication Plaintiff purportedly relied upon in choosing to move forward with the session. The Court may accept, for the purposes of argument, Plaintiff's interpretation of Officer Covarrubias's action as an assurance that he would protect Plaintiff during Daniel's session. That alone does not constitute the affirmative creation of danger. As the Supreme Court made clear in *DeShaney*, the State does not acquire a duty to protect under the 14th Amendment by "voluntarily undertaking to protect [an individual] against a danger it concededly played no part in creating." 489 U.S. at 201; *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 700 (9th Cir. 1988) (allegation "that state actors knew of her plight and affirmatively committed to protect her" did not establish special relationship or state-created danger). Consequently, Defendant Ogbechie's bringing Daniel to Plaintiff's office did not render him a participant in creating a dangerous condition.

In sum, Plaintiff has not identified any affirmative conduct by Defendant Covarrubias that created danger, as opposed to a mere failure to act in the face of danger. Although Officer Covarrubias's failures may have violated OP 39.29 and "may have been a dereliction of [his] duties, they were not an affirmative act that created an actual, particularized danger." *Martinez*, 943 F.3d at 1271 (internal quotations and alterations omitted). Plaintiff's claim for a state-created danger thus fails at the first requirement, wherefore Defendant Covarrubias is entitled to summary judgment in his favor. *See Devereaux*, 263 F.3d at 1076.

### b.   Qualified Immunity

Defendant Covarrubias is entitled to summary judgment for yet another reason: qualified

immunity. Even assuming a violation of Plaintiff's constitutional right to be free from state-created danger, the right was not clearly established.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017) (quoting *Mullenix v. Luna*, 136 S. Ct. at 308. Specifically, existing precedent "must have placed the statutory or constitutional question beyond debate." *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017). "The precedent must be 'controlling'—from the Ninth Circuit or the Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

Importantly, moreover, the Court's analysis is guided by the "longstanding principle that 'clearly established law' should not be defined at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotation marks omitted). That is, "[t]he clearly established law must be particularized to the facts of the case." *Id.* "This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *City & County of San Francisco v. Sheehan*, 135" S. Ct. 1765, 1774 (2015) (internal quotation marks and alterations omitted).

Here, the Court agrees with Plaintiff that the basic legal standard for claims under the state-created danger exception was clearly established at the time of the events in this case, as was the applicability of the exception to claims by prison staff who are harmed by inmates. Opp. at 15. However, Plaintiff has not met his burden of identifying controlling authority in which "an officer acting under similar circumstances as Officer [Covarrubias] was held to have violated" the 14th Amendment. *White*, 137 S. Ct. at 552.

Most of the cases Plaintiff cites—*Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989), *Penilla v. Huntington Park*, 115 F.3d 707 (9th Cir. 1997), *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082 (9th Cir. 2000), *Kennedy v. Ridgefield City*, 439 F.3d 1055 (9th Cir. 2006), and *Bracken v. Okura*, 869 F.3d 771 (9th Cir. 2017)—"lay out [state-created danger] principles at only a general level." *White*, 137 S. Ct. at 552. The Supreme Court has repeatedly emphasized

that such cases "are not inherently incapable of giving fair and clear warning to officers." *Id.* (internal quotations omitted). The Court therefore rejects Plaintiff's contention that *Wood*, *Penilla*, *Munger*, *Kennedy*, and *Bracken* meet his burden in the clearly established inquiry.

The case bearing the closest resemblance to this one is *L.W. v. Grubbs*, 974 F.2d 11 (9th Cir. 1992) (hereinafter "*Grubbs I*"). *See* Opp. at 15-18. In *Grubbs I*, "L.W., a registered nurse employed by the State of Oregon at a medium security custodial institution for young male offenders, was raped and terrorized by an inmate." *Grubbs I*, 974 F.2d at 120. The defendants were her supervisors at the correctional institution; they had also hired L.W. after representing to her that "she would not be required to work alone with violent sex offenders." *Id.* at 120; *see also id.* at 121 (noting that defendants had "misrepresent[ed] to her the risks attending her work"). The Ninth Circuit held, on a motion to dismiss, that L.W. had plausibly alleged that the defendants had affirmatively "created the danger to which L.W. fell victim." *Id.* They had purportedly done so by "knowingly assign[ing]" inmate David Blehm to work alone with L.W. "despite their knowledge that . . . Blehm had an extraordinary history of unrepentant violence against women and girls" and "was likely to assault a female if left alone with her." *Id.* The defendants had thus "create[d] an opportunity for Blehm to assault L.W. that would not otherwise have existed." *Id.*

Plaintiff contends that *Grubbs I* clearly established that the state-created danger doctrine applies "in the prison healthcare provider context." Opp. at 17. True enough. But the factual circumstances in *Grubbs I* differ substantially from the ones at issue here. *See Horton*, 915 F.3d 601.

In particular, the *Grubbs I* defendants were L.W.'s supervisors; as such, they determined who she worked with. They also possessed information about the inmates that they could use in making those assignments. Officer Covarrubias, by contrast, in no way directed Plaintiff Ogbechie to work with Daniel or any particular inmate. He had neither the information nor the authority to make such decisions. On the contrary, Office Covarrubias acted at Plaintiff's behest in bringing Daniel to Plaintiff's office on the day of the incident. The Court finds that this difference is material to the "clearly established" analysis. Although *Grubbs I* put officers with the authority to make personnel decisions on notice that they could be liable for exposing their

14

subordinates to dangerous inmates, it did not clearly establish that an officer without such authority could be liable for failing to protect fellow staff from dangerous inmates. And, it certainly did not make clear that complying with an individual's request to see a dangerous inmate could amount to the affirmative creation of danger.

The Court therefore holds that a reasonable officer in Officer Covarrubias's position would not have known that failing to visually monitor Plaintiff's session with Daniel was unlawful at the time of the incident. Accordingly, Defendant Covarrubias would be entitled to qualified immunity for the asserted constitutional violation.

*** 

Without dispute, Plaintiff's allegations and evidence describe a traumatic and frightening attack. Nevertheless, even construing the facts in the light most favorable to Plaintiff, they do not suffice to make out a state-created danger claim against Officer Covarrubias. Defendants' motion for summary judgment as to Count 1 against Officer Covarrubias is, therefore, GRANTED.

### 2. Claim against Supervisory Officers

The Court now turns to Plaintiff's § 1983 claims against the three supervisory defendants, Correctional Sergeant P. Soto, Correctional Captain M. Thomas, and Associate Warden N. Walker.

"[T]here is no respondeat superior liability under § 1983." *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1151 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). Instead, a "supervisory official" is liable under § 1983 only if "there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (internal quotations omitted). Hence, though a supervisor will "rarely be directly and personally involved in the same way" as individual officers, he may be liable for "setting in motion of acts which cause others to inflict constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991).

In this case, none of the supervisory defendants was alleged to have been directly involved

15

in the incident with Daniel. *See* Opp. at 11; Pl. Responsive Separate Statement at 3. Rather, they are sued as supervisory officials for "failing to properly train Covarrubias" or "acquiescing if not contributing to his reckless disregard for the monitoring requirement." Opp. at 11. As the Court just held, however, Plaintiff has failed to raise a triable dispute that Officer Covarrubias committed a constitutional violation. Consequently, Plaintiff's claim that Defendants contributed to any violation likewise fails. *Accord Arnold v. Cty. of Alameda*, No. 15-CV-04083-HSG, 2016 WL 4074484, at *6 (N.D. Cal. Aug. 1, 2016).

Defendants' motion for summary judgment as to Count 1 against Defendants Soto, Thomas, and Walker is GRANTED.

### B. Count 2: Negligence

Defendants also move for summary judgment as to Count 2, Plaintiff's negligence claim. They make two arguments in support of their motion. First, Defendants contend that the claim is "prohibited by the Eleventh Amendment," which they believe bars official capacity suits against government officials. Mot. at 20-21. Second, Defendants say they are immune from liability "for their discretionary acts" per California Government Code § 820.2. Mot. at 22-23. The Court considers each argument in turn.

#### 1. Sovereign Immunity under the 11th Amendment

"The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an arm of the state, its instrumentalities, or its agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (internal quotations omitted). "Absent such waiver or legislation, the state is absolutely immune from suit in federal court." *Ashker v. California Dep't of Corr.*, 112 F.3d 392, 395 (9th Cir. 1997). "That immunity extends to damages claims against state officials acting in their official capacities, whether such claims are grounded in federal or state law." *Id.* As the U.S. Supreme Court has explained, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" and are therefore "treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

As relevant here, however, the Eleventh Amendment does not bar claims against state officials sued in their "personal" or "individual" capacities. *Id.* Count 2 is expressly brought

16

against all Defendants in their personal capacities. *See* FAC at 6.

Defendants respond that although Count 2 is styled a personal-capacity suit, it is actually an official-capacity suit because "Defendants' alleged liability arises only from their alleged breach of work-related duties." Dkt. No. 57 ("Reply") at 13. However, this argument is foreclosed by the U.S. Supreme Court's definition of "personal" and "official" capacity suits. *See Hafer*, 502 U.S. at 25; *see also Ashker*, 112 F.3d at 395. "[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Hafer*, 502 U.S. at 25. Thus, a personal-capacity suit may properly be brought "to impose individual liability upon a government officer for actions taken under color of state law." *Id.* Count 2 purports to do just that. *See Ashker*, 112 F.3d at 395 (accepting the complaint's characterization of the claim as a personal-capacity claim).

Hence, because Count 2 sues Defendants in their personal capacities, the Eleventh Amendment does not bar it.

### 2. Discretionary Immunity under California Government Code § 820.2

Having rejected Defendants' claim of immunity under the Eleventh Amendment, the Court considers Defendants' alternative argument that they are entitled to discretionary immunity under California Government Code § 820.2. That provision states:

> Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

Cal. Gov. Code § 820.2. Defendants contend that Officer Covarrubias's decision not to visually monitor Plaintiff's session with Daniel was within his discretion; they further contend that the supervisory defendants' respective managerial decisions are within their discretion.

In determining what acts are immune under § 820.2, the California Supreme Court has "draw[n] the line between 'planning' and 'operational' functions of government." *Liberal v. Estrada*, 632 F.3d 1064, 1084–85 (9th Cir. 2011) (quoting *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995)). "Immunity is reserved for those basic policy decisions which have been expressly

1   committed to coordinate branches of government, and as to which judicial interference would thus
2   be unseemly." *Id.* (quoting *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1051 (2007))
3   (internal quotations and alterations omitted). "On the other hand, . . . there is no basis for
4   immunizing lower-level, or 'ministerial,' decisions." *Caldwell,* 10 Cal. 4th at 981. For instance,
5   the California Supreme Court has held that "a police officer's decision to detain or arrest a suspect
6   is 'not a basic policy decision, but only an operational decision by the police purporting to apply
7   the law.'" *Liberal*, 632 F.3d at 1085 (quoting *Gillan*, 147 Cal. App. 4th at 1051). The California
8   Supreme Court has similarly rejected claims of immunity for:

> a bus driver's decision not to intervene in one passenger's violent assault against another (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal. 3d 780, 793–795), a college district's failure to warn of known crime dangers in a student parking lot (*Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 815), a county clerk's libelous statements during a newspaper interview about official matters (*Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 415–416), university therapists' failure to warn a patient's homicide victim of the patient's prior threats to kill her (*Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 444–447), and a police officer's negligent conduct of a traffic investigation once undertaken (*McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252, 261–262).

*Caldwell,* 10 Cal. 4th at 981-82.

Considering these precedents, the Court finds that the decision for which Officer Covarrubias has been sued is closely analogous to the above-cited examples of lower-level, operational decisions. In particular, Officer Covarrubias's decision not to visually monitor Plaintiff's session with Daniel is akin to "an individual bus driver's decision concerning what form of protective action to take in a particular case" and hence "does not rise to the level of governmental decisions calling for judicial restraint." *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 794 (1985) (internal quotations omitted). The Court therefore holds that Officer Covarrubias is not entitled to discretionary immunity against Count 2.

The decisions by Defendants Soto, Thomas, and Walker present a closer call. These defendants are sued for having allegedly failed to train subordinates to follow the monitoring requirement in OP 39.29 or otherwise enforce said monitoring requirement. Pl. Responsive Separate Statement at 15. The Court agrees with Defendants that a decision to formally repeal or

change OP 39.29 would constitute a "basic policy decision" covered by discretionary immunity. However, Plaintiff disclaims any claim based on a repeal of the monitoring requirement in OP 39.29; indeed, he cites evidence showing that Defendants Soto, Thomas, and Walker all lacked the authority to amend OP 39.29. Pl. Responsive Separate Statement at 15 (citing Purcell Decl. at 93, which indicates that the "Warden" must give "final approval" over Operational Procedure 39). Thus, in the Court's view, Plaintiff's claim against these Defendants is based on their alleged failure to properly implement a policy. That is an operational decision, and as such is not shielded by discretionary immunity. *Accord Turano v. Cty. of Alameda*, No. 17-CV-06953-KAW, 2019 WL 501479, at *3 (N.D. Cal. Feb. 8, 2019).

In sum, the Court holds that discretionary immunity under California Government Code § 820.2 does not cover the decisions at issue in Count 2 and DENIES Defendants' motion for summary judgment.

## IV. ORDER

As set out above, Defendants' motion for summary judgment is GRANTED in full as to Count 1 and DENIED as to Count 2.

**IT IS SO ORDERED.**

Dated: June 11, 2020

EDWARD J. DAVILA
United States District Judge